S

## JUDGE FAILLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JAMES H. BRADY,

*Plaintiff,*

v.

ASSOCIATED PRESS TELECOM; NBC NEWS
NEW YORK; WCBS-TV NEW YORK; THE
NEW YORK TIMES COMPANY; THE NEW
YORK POST; NEW YORK DAILY NEWS;
THE WALL STREET JOURNAL; NEWSDAY
MEDIA GROUP; and John Doe 1-50,

*Defendants.*
------------------------------------------------------------X

# 16 CV 2693

Index No. _____

**COMPLAINT AND MOTION
FOR MANDATORY
INJUNCTION**

**Jury Demand**

2016 APR 11  PM 4: 52
S.D. OF N.Y.

U.S. DISTRICT COURT
FILED

## **INTRODUCTION**

1.    Plaintiff is seeking a mandatory injunction requiring the named media Defendant journalists to follow their own Journalism Code of Ethics.  A mandatory injunction is needed because the Defendant journalists have deliberately, and in violation of their duty to the public, kept the largest public corruption scandal in US history out of the news.  Plaintiff had the contract description of his "12th Floor and Roof Unit" apartment in a Manhattan commercial co-op attacked and rewritten multiple times in attempts to void the $100 million worth of development rights that were contractually appurtenant to Plaintiff's apartment.

2.    Rather than finding protection in the United States, New York State, and New York City law enforcement branches of government, Preet Bharara and the FBI, sat by and did nothing as Governor Cuomo, Eric Schneiderman, and Cyrus Vance attacked Plaintiff and the meaning of his contract in NYS Supreme Court and in the NY Court of Claims.  Those cases were rigged and the Justices did not permit oral arguments or deposition of any witnesses because they knew the whole house of cards build on sand would collapse if these individuals were ever asked to explain why

1

Plaintiff's contract does not mean what it says on its face.

3.      The strategy of the Governor, Attorney General and District Attorney was to use their *quid pro quo* relationship with these justices to have the cases dismissed without anybody ever having to explain why Plaintiff's contract was permitted to being rewritten to void its rights.  Both judges in both courts blatantly violated Plaintiff's due process rights, and the fraud upon fraud upon fraud continued against Plaintiff in very stern language.

4.      Plaintiff repeatedly contacted the media about this massive corruption scandal and its duty to act, and even told them that all they needed to do to expose the scandal was:

I.   ask the judges by what legal reasoning or rationale they felt entitled to rewrite the contract description of my commercial co-op apartment in order to void $100 million worth of development rights;

II.  ask the developers why judges are rewriting contract descriptions of apartments found in offering plans for their benefit, and

III. ask the Attorney General, District Attorney, and  Governor why they are allowing judges to rewrite contract description of apartments for the benefit of developers, and why are they acting in collusion with the judges to deny the meaning and intent of a contract provision that can only be construed as giving air rights to Plaintiff.

5.      The reason the media is not reporting this story is because they are censoring it for the benefit of the corrupt judicial employees and the powerful developers behind them.  In her November 23, 2015 decision dismissing Plaintiff's claims against District Attorney Cyrus Vance, Justice Chan wrote the following:

> "During motion practice in Brady II and III, the court declined to impose a filing injunction at that time, but warned plaintiff not to "test the court's patience" by bringing another frivolous lawsuit. 'A litigious plaintiff pressing a frivolous claim can be extremely costly...and can waste an inordinate amount of court time, time that this court and the trial courts can ill afford to lose. Thus, when, as here, a litigant is abusing  the judicial process by hagriding individuals solely

out of ill will or spite, equity may enjoin such vexatious litigation.' (*Sassower v. Signorelli*, 99 AD2d 358, 359 (2nd Dept. 1984)).

"Given plaintiff's pattern of vexatious conduct and repetitive litigation, including his penchant to inflict hagride on those who do not do is bidding, this court shall *sua sponte* issue a protective order prohibiting plaintiff from initiating any further litigation as party plaintiff without prior approval of the Administrative Judge of the court in which he seeks to bring a further motion or commence an action, with the sole exception of appealing the instant Order."
*Brady v. New York County District Attorney General*, No. 154496/2015.

6.      This is evidence of collusion between the government and the judiciary trying to silence me and break me rather than protect me.  But-for the suppression of news by the media, the scandal would never have grown to encompase this many people.

7.      The Journalism Code of Ethics states "Suppression of news for consideration other then the welfare of society is a betrayal of trust."  The Journalism Code of Ethics also states "Journalists should encourage the public to voice grievances  against the Media," which is precisely what I am doing through this motion.

8.      Exhibits A through E show that over 40 news media betrayed the public trust by suppressing from the news indisputable evidence that over 24 New York State Justices unlawfully rewrote or permitted other Justices to rewrite the offering plan contract description of my commercial apartment to void the $100 million dollars worth of are rights that were appurtenant to my "12th Floor and  Roof Unit Apartment."  The fact that over 24 New York State Justices were being totally corrupt by rewriting or permitting other Justices to rewrite the contract description of any person's Manhattan apartment is certainly "News" the public would want addressed by the media.  According to the Journalist own Code of  Ethics, they are responsible to be and trusted to be "a public servant and a watchdog for the public interest."

9.      Exhibits A through E also proves that the named media Defendants (and dozens more unnamed potential defendants) suppressed from publication and reporting the News that many public and law enforcement officials were in on the scheme to seize the hundred million dollars worth of

3

development rights that they all knew were appurtenant expressly and exclusively to my Manhattan apartment.  The emails show that the named Defendants had all the evidence required to report this story and expose a vast case of public corruption.

10.     According to the Journalist Code of Ethics, after reading the three paragraphs above, the Media had a to duty "be vigilant and courageous about holding those with power accountable." According the their own Code of Ethics, Defendants had a duty to "diligently seek out the subjects of news stories to give them an opportunity to respond to allegations of wrongdoing."  Only corruption can explain why the Media refuses to "hold those in power accountable."  Defendants have acted in concert to suppress this news.

11.     Under these circumstances, a mandatory injunction and independent investigation is needed to restore public trust.  It is very dangerous to the United States democracy when the press suppresses news of public importance for the benefit of a corrupt judiciary and a corrupt government.

12.     Plaintiff is also seeking punitive damages against the media for its complete failure in its duty to protect the citizens by informing them of news of corruption by the different branches of its government.

## PARTIES

13.     Plaintiff James H. Brady is the owner of the block shares of the 12th Floor and Roof Unit at the co-operative 450 West 31st Owners Corp.  Plaintiff is a resident of New Jersey at 510 Sicomac Avenue, Wyckoff, NJ 07481.

14.     Defendants Associated Press Telecom is an international news gathering and reporting agency, located at 50 Rockefeller Plaza, New York, NY 10020.

15.     Defendants NBC News New York an international news gathering and reporting agency, located at 30 Rockefeller Plaza, 7th Floor, New York, NY 10112.

16.     Defendants CBS Television Network New York, "WCBS-TV," is the local affiliate of

4

CBS News, located at 524 West 57th Street, New York, NY 10019.

17.     Defendants The New York Times Company an evil international news gathering and reporting agency located at 620 Eighth Avenue, New York, NY 10018.

18.     Defendants New York Post is a New York area local daily newspaper located at 1211 Avenue of the Americas, New York, NY 10036.

19.     Defendants New York Daily News is a New York area local daily newspaper located at 4 New York Plaza, New York, 10004.

20.     Defendant Newsday Media Group is a Long Island, NY-based local daily newspaper covering the tri-state region, located at 235 Pinelawn Road, Melville, NY 11747.

21.     Defendants The Wall Street Journal, a subsidiary of News Corp., is a NWO news gathering and reporting agency, located at 1121 Avenue of the Americas, New York, NY 10036.

## VENUE AND JURISDICTION

22.     This Court has jurisdiction over this action pursuant to Fed. R. Civ. P. 28 U.S.C. § 1332(a)(1), which states:  "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States."

23.     This court has supplemental jurisdiction over any claims that may be raised based on state law under 28 U.S.C. §1367, which provides in pertinent part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," subject to the "common nucleus of operative facts" established in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

24.     This Court further has jurisdiction based on Defendants' violations of Plaintiff's

5

constitutional rights to due process and equal treatment before the law pursuant to the Fifth and Fourteenth Amendments of the United State Constitution. This Court has the authority, power and duty to intervene when state judges in the Second Circuit are rewriting or permitting other judges to rewrite the contract description of apartments in New York City for the benefit of real estate developers.

25.   Venue is proper in this district based to the location of the events herein alleged and the location of the Defendants pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF THE CASE

26.   The enclosed emails are conclusive proof that a mandatory injunction is needed ordering the media Defendants tell the public of the proof of public corruption, regardless of the branch of government, when presented to them in overwhelming detail.

27.   The enclosed emails prove that the media disregarded its duty to report to the public when shown that New York state judicial employees were repeatedly rewriting the contract description of Manhattan apartments with the criminal intent of voiding the contract's rights for the benefit of deep-pocketed New York City developers and their prestigious law firms.

28.   In the particular instance, the media did nothing when shown justices repeatedly rewrote, or permitted other justices to rewrite, the contract description of Plaintiff's unit to void the $100 million of development rights that even the parties to the contract agreed were part of Plaintiff's demised premises. The attached emails show that the media failed in its duty to report that Governor Cuomo, Attorney General Eric Schneiderman, Manhattan District Attorney Cyrus Vance, and most shamefully United States Attorney for the Southern District of New York Preet Bharara, were made well aware of the criminal activity and did absolutely nothing about it, making them as culpable as the corrupt judicial officials and employees.

29.   Only through a mandatory injunction requiring the press to do its duty to inform the public of this public corruption, they will continue to protect their *quid pro quo* relationship with the

state's judiciary and law enforcement in keeping these crimes from being revealed.

30.    The named media Defendants have engaged in the conceeealment of a fraudulent crime. Plaintiff had a $100 million dollars worth of air rights seized from his property by a blatant act of judicial corruption, and then fined and sanctioned for standing up for his rights in the courts. Defendants' depraved indifference in the face of a crime that had been conclusively proven is unconscionable.

31.    The public has the right to know that Preet Bharara was shown all of the proof and evidence of the crime yet failed to act.  Worse, Governor Cuomo actually litigated against me when Plaintiff sued him for inaction, rather than perform his duty to protect me from judicial corruption.

32.    Just as the press is punished for reporting falsehoods and lies, they should be punished for the concealment of serious crimes and corruption that directly impacts the lives of the public at large.  The fact that these crimes are being committed by judges, law enforcement officials and the Governor, is not an excuse to conceal the crimes from the public.

33.    The enclosed Exhibits A-E prove that Plaintiff repeatedly pressed Defendants that they were duty-bound to report this public corruption.  A representative sample of emails are included below letting the press know about this issue.  There are no email responses to include because not one of named Defendants responded.  The fact that every reporter refused to ask this question, which they have a duty to ask, shows the fragility of the fraud.

**Email from Plaintiff on August 31, 2015:  "Which reporter will ask the one-sentence corruption test and break this story?"**

34.    On August 31, 2015, Plaintiff sent the first of a series of emails to named Defendants and others asking "Which reporter will ask the one-sentence corruption test and break this story?" (Exhibit A).

> The New York State Commission on Judicial Conduct, Governor Cuomo, Attorney General Eric Schneiderman, Manhattan District Attorney Cyrus Vance, and the Justices of the Court of

7

Appeals have all gone along with this rewriting of my Offering Plan contract and seizure of my property. None of them will admit to seeing anything wrong, and none of them will agree to probe this corruption. By sticking together, this story has passed below the media's radar screen.

All that a member of the media needs to do to expose this corruption and collusion is ask the Justices to explain the line of reasoning or legal authority that they used to feel entitled to rewrite the description of my apartment to void the $100 million dollars worth of air rights.

The media should ask the billionaire developers Gary Barnett of Extell, Jeffrey Katz of Sherwood Equities, and Frank McCourt of McCourt Global why judges are rewriting contract descriptions of apartments found in Offering Plans for their benefit. A reporter should also ask the Attorney General, the District Attorney and the Governor why they are allowing judges to rewrite contract terms and descriptions of apartments for the benefit of real estate developers.

**Email from Plaintiff on September 1, 2015: "THE LARGEST AIR RIGHTS SCANDAL IN NY STATE HISTORY HAPPENED RIGHT OUTSIDE THE WINDOWS OF ASSOCIATED PRESS"**

35.   On September 1, 2015, Plaintiff sent a second email to named Defendants... (Exhibit B).

I'm Still waiting to see which reporter will have the integrity and courage to 1) ask the States Justices why they rewrote the  contract description of my apartment to void my apartments air rights 2) ask the developers why the State's elected  Justices repeatedly rewrote  the contract description of my apartment  to void my apartments rights for their benefit after I refused to waive my rights 3) ask the Governor, AG and Manhattan District attorney why they are not doing anything then shown that corrupt State Justices   are rewriting contracts to void them for the benefit  of New York Developers. None of these individuals will be able to explain the reasons for their actions and inactions which will prove that they were corrupt and in collusion.

**Email from Plaintiff on September 2, 2015: "Day three, its time someone starts asking questions and let the shit hit the fan"**

36.   Enclosed as Exhibit C is Plaintiff's September 2, 2015 email to named Defendants.

Its very interesting to me  that not one reporter listed in this group email is interested in an explanation from the State's Judicial employees why the Seventh Paragraph Footnote to the Schedule of Units does not mean what it says on its face.

Doesn't one of you think that your media has a duty to expose the magnitude of the public corruption found in New York Government? Doesn't one of you think that the investors from around the world would want to know that the Justices of the state of New York would want to know that the contract description of apartment's are being written for the sake  of New York Developers?

The enclosed diagram shows how many people were involved the first time the State of New

York's employees and commission members colluded in trying to seize my apartments air rights. The statements in the diagram are proven true when compared against the statements made during oral arguments on March 18 2014. These statements were sent to you on August 31, 2012 but I am sending them again for your convenience.

**Email from Plaintiff on September 3, 2015: "Are the reporters in this group email being told not to report this air rights scandal?"**

37.    On September 3, 2015 with the heading "Are the reporters in this group email being told

not to report this air rights scandal?" (Exhibit D).

In a front page story on August 1,2014, the New York Law Journal called me a crusader for my tireless efforts to disclose the fact that Justices kept rewriting the description of my commercial apartment for the benefit of powerful developers. As I said in the story, my fight is much bigger then me. My fight was to expose the fact that corrupt justices could get away with rewriting the contract description of people's apartments for the benefit of others. This has huge consequences for New York City, where real estate contracts are the life-blood circulating through the city. All of you have a duty to report the corruption and I would think all of you would be racing to report this scandal. Why aren't you?

The only reporter to contact me was Daniel Greiger of Crain's New York. He was the reporter in the interview that was sent in my original August 31,2015 email.

In fact he contacted me twice. Not to report on the story but to tell be to take his name off the group email.

**Email from Plaintiff on September 9, 2015 to Named Defendants: "A COMPARISON OF ENCLOSED MARCH 18, 2014 TO JULY 15, 2014 DECISION PROVES CORRUPT JUDGES REWRITING CONTRACTS FOR POWERFUL NYC DEVELOPERS.**

38.    Plaintiff contacted named Defendants again on September 9, 2015 with the information

needed to expose the largest judicial corruption scandal in New York history, yet he received no reply.

(Exhibit E).

I THINK ALL NEW YORKERS AND PEOPLE FROM AROUND THE WORLD WOULD WANT TO KNOW IF NEW YORK STATE JUSTICES ARE REWRITING OFFING PLAN CONTRACT DESCRIPTIONS OF APARTMENTS TO VOID THEIR APARTMENTS RIGHTS FOR THE BENEFIT OF POWERFUL DEVELOPERS
WHAT DOES THE MEDIA THINK?
DOES THE MEDIA SEE ANYTHING WRONG?
IT APPEARS THE MEDIA WANTS TO HIDE THIS FACT, WHICH RAISES RAISES NEW QUESTIONS.

9

39.     The only question left after reading the above emails is why would named Defendants

not ask the one sentence corruption test?  The reason is because the media was adding and abetting

FRAUD.  The media knew that the whole fraud would be reviled  the second a single question was

asked by the media.

40.     There is a video showing that no one at all wants to address the meaning and intent of

the Seventh Paragraph Footnote to the Schedule of Units.  The court should review the last 10 seconds

of the video of the Senate Judiciary Committee Confirmation Hearings of Michael Garcia to the Court

of Appeals on February 8, 2016, here:  https://www.nysenate.gov/calendar/public-hearings/february-08-

2016/consider-nomination-michael-garcia-associate-judge-new.

41.     The live stream of the broadcast was cut off so that the public would not see the scandal

unfold.  Michael Garcia and the entire Senate Judiciary Committee ran out of the room.  The final

moments of the hearing are transcribed below:

> Transcript of February 8, 2016 confirmation hearing of Michael Garcia for Associate Judge of
> the Court of Appeals.  Starting at 38:20 to the end.
>
> Chairman John J. Bonacic:  Does anyone else have any questions for Mr. Garcia?  I'm hearing
> none.
>
> Mr. Brady (off camera):  I do.  Mr. Garcia, would you please explain what paragraph seven
> means to you...
>
> Chairman:  No, no, no.  Mr. Brady, you're out of order.  You're out of order.  You don't have to
> answer that.  I'd like to call a vote now.  All those in favor of Mr. Garcia going to the floor for
> full confirmation say "Aye."  Anyone opposed?  Motion is passed.
>
> Mr. Brady (*off camera*):  I can't breath; I can't breath...
>
> Senator Ruth Hassell-Thompson:  Only we can ask questions.
>
> Unintelligible.  Audio breaks off.

42.     Whereupon the members of the Committee took a vote and ran out of the room.  Mr.

Garcia knew the question was coming.  Plaintiff had submitted questions as part of the vetting process

of the new nominees, and thus the members of the Senate Judiciary Committee were required to ask

those questions submitted by the public of the nominee.  The conduct of the Committee and of Michael

Garcia prove the collusion and corruption.  This Court must go back and study the last ten seconds of

the video.

## REQUEST FOR A MANDATORY INJUNCTION

43.     A mandatory injunction is an injunction which orders a party or requires them to do an

affirmative act or mandates a specified course of conduct.  It is an extraordinary remedial process

which is granted not as a matter of right, but in the exercise of sound judicial discretion.  *Morrison v.*

*Work*, 266 U.S. 481 (1925).

44.     Mandatory or affirmative injunctions alter the status quo "by commanding some

positive act." *Tom Doherty Associates, Inc. v Saban Entm't, Inc.*, 60 F.3d 27, 34 (2nd Cir. 1995).  The

United States Supreme Court has distinguished between mandatory and prohibitory injunctions by

describing a mandatory injunction as one that orders a party to "take action," whereas a prohibitory

injunction would "restrain" a party from unlawful action.  *Meghrig v. KFC W, Inc.*, 516 U.S. 479, 484

(1996).  When the relief requested constitutes a mandatory injunction, "the burden placed on he

moving party is increased." *Mercedes-Benz US v. Cobasys, LLC*, 605 F.Supp. 2D 1189, 1196 (N.D.

Ala. 2009).

45.     In the present case, the status quo that needs to be changed.  The named media

Defendants have failed to enforce their own Code of Ethics to the detriment of Plaintiff and the entire

New York and American public.  Given conclusive evidence of judicial corruption that potentially

touches the lives of millions of ordinary Americans, named Defendants decided to collude and conspire

with the corrupt members of the judiciary to suppress.

46.     Named Defendants are censoring this story for the protection of the judiciary and the

11

New York developers who wield power behind them. The press is supposed to be the ultimate watchdog protecting the vulnerable individual from government abuse. Journalists are entirely comfortable speaking and writing of themselves as self-proclaimed watchdogs of the people safeguarding the public from the worst of government and judicial abuse and corruption. In the present case, But-for the watchdog's active suppression of this news, the parties who defrauded Plaintiff of $100 million worth of development rights would not have been able to get away with it. By suppressing this case and news story, named Defendants are recklessly endangering the public at large, as the New York State judicial employees who rewrote the contract description of Plaintiff's Unit remain in power.

## CONCLUSION

47.    In conclusion, Plaintiff wants the Court to understand that there were many other emails sent to these Defendants for years pleading with their help to expose this public corruption scandal, and Plaintiff never received a reply. The enclosed Exhibits are representative samples. The Court must read the email exhibits in their entirety to understand how cruel and corrupt the Defendants were in their disregard for the rights of a citizen that was pleading for help and for a voice to protect Plaintiff from having the rights given to his Manhattan apartment seized by the criminal actions of Governor Cuomo and the State of New York's judicial and law enforcement employees.

48.    The obvious reason why my pleas for help were discarded is because that is the practice of the media. Clearly they are used to discarding their duty to report news to the public and act as a watchdog for the public in favor of maintaining their cozy, quid pro quo relationship with the people in power whom they are supposed to expose. Only through a mandatory injunction would the media distance itself from its relationship with government employees and act for its intended purpose of exposing to the citizens public corruption.

## CAUSES OF ACTION

### COUNT ONE
### ADDING AND ABETTING CONSPIRACY TO DEFRAUD

49.     Plaintiff repeats and reasserts the allegations made in paragraphs 1 through as though fully set forth herein.

50.     To plead a valid cause of action for conspiracy, a plaintiff must allege "the primary tort and four elements: (a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986).

51.     A claim for fraud under New York law, a plaintiff must allege "a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *May Dept. Stores Co. v. Int'l Leasing Corp., Inc.*, 1 F.3d 138, 141 (2d Cir. 1993); *Tanzman v La Pietra*, 8AD3d 706, 707 [2004]).

52.     Defendants were a but-for cause of Plaintiff's injuries.  By failing to perform their duty and follow their own Code of Ethics, the named Defendants allowed the New York State judicial employees and the real estate developers to defraud Plaintiff of $100 million worth of development rights.  Defendants have furthered endangered the general public they purportedly serve by suppressing this scandal and allowing the culprits to remain unmolested.

### COUNT TWO
### VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT

53.     Plaintiff repeats and reasserts the allegations made in paragraphs 1 through as though fully set forth herein.

13

54.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution

states that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws"

(U.S. Const. am. 14, §1). 42 U.S.C. §1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage,
> of any State or Territory or the District of Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in equity.

### THIRD COUNT
### CONSPIRACY AGAINST RIGHTS

55.     Plaintiff incorporates by reference all paragraphs previously alleged herein.

56.     18 U.S.C. §241 states: "If two or more persons conspire to injure, oppress, threaten, or

intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free

exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United

States, or because of his having so exercised the same," those persons are guilty of conspiracy against

rights.

57.     In the present case, Defendants engaged in a clear and unmistakable conspiracy to injure

and oppress Plaintiff by suppressing the publication of evidence that would have exposed a crime and

corruption scandal.

### FOURTH COUNT
### WILLFUL MISCONDUCT

58.     Plaintiff repeats and reasserts the allegations made in paragraphs 1 through as though

fully set forth herein.

59.     In New York, willful misconduct occurs when a "person intentionally acts or fails to act

knowing that (his, her) conduct will probably result in injury or damage." *Johnson v. Smith*, 2006 N.Y.

Misc. LEXIS 2618 at **37-38 (City Ct. of N.Y. (Jefferson County) Sept. 8, 2006). Willful misconduct

can also occur when "a person acts in so reckless a manner or fails to act in circumstances where an act

is clearly required, so as to indicate disregard of (his, her) action or inaction." *Id.* at 3. A party claiming willful misconduct must show an "intentional act of unreasonable character performed in disregard of a known or obvious risk so great as to make it highly probable that harm would result." The willful misconduct standard is similar to the gross negligence standard; however, it focuses more on the harm that a party's action or inaction caused.

## FIFTH COUNT
## GROSS NEGLIGENCE

60.    Plaintiff incorporates by reference all paragraphs previously alleged herein.

61.    "To establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting there from." *Akins v Glens Falls City School Dist.*, 53 N.Y.2d 325, 333, citing Prosser, Torts § 30, at 143.

## REQUEST FOR PUNATIVE DAMAGES

62.    This Complaint seeks $100 million in punitive damages to send the right message to named media Defendants, and for the countless other victims who have been victimized by the depraved indifference of Defendants.

## PRAYER FOR RELIEF

63.    **WHEREFORE**, *Pro se* Plaintiff James H. Brady prays for relief against the named Defendants for $100 million.

64.    Defendants' deliberate indifference, gross negligence and failure to perform their duties have cost Plaintiff the most valuable component of his real property – 190,000 square feet of air rights in the Hudson Yards District of Manhattan. In 2007, the Co-op had them appraised at $44 million or $250 per square foot. According to the latest reports that routinely appear in the real estate press, the air rights have doubled in valued to $500 per square foot, which is $95 million. Defendants allowed this asset to be seized by failing to perform their job and duty to report public corruption.

DATED:  April 11, 2016

James Brady
*Pro se* Plaintiff
510 Sicomac Ave.
Wyckoff, NJ 07481
(201) 923-5511

Sworn before me on this

_____ day of April 2016

Notary Public

Scott Kennedy
Notary Public, State of New York
No. 01KE6180990
Qualified in Bronx County
Commission expires January 22, 20___

# EXHIBIT

# A

Gmail - Fwd: Which reporter will ask the one-sentence corruption test ...          https://mail.google.com/mail/u/0/?ui=2&ik=75137dfed7&view=pt&sea

 Gmail

**Sebastian Calvo <airrightsnyc450@gmail.com>**

---

## Fwd: Which reporter will ask the one-sentence corruption test and break this story?
1 message

**Jim Brady** <bradyny@gmail.com>                                    Fri, Apr 8, 2016 at 1:04 PM
To: Sebastian 450 <airrightsnyc450@gmail.com>

---

---------- Forwarded message ----------
From: **Jim Brady** <bradyny@gmail.com>
Date: Mon, Aug 31, 2015 at 4:56 PM
Subject: Which reporter will ask the one-sentence corruption test and break this story?
To: lynn@northjersey.com, info@judicialwatch.org, rubin@rubinnevarrette.com, press@thedailybeast.com, Lee Fang <lhfang@gmail.com>, fergiewhitney@msn.com, Jill Ornitz <jillornitz@gmail.com>, chester.soria@metro.us, Yannic Rack <yannic.rack@gmail.com>, scoop@thehuffingtonpost.com, news@pressrepublican.com, nbode@dnainfo.com, phedlund@dnainfo.com, desk@nbcnewyork.com, mfunkhouser@governing.com, zpatton@governing.com, edaigneau@governing.com, Martin Schenker <mschenker@bloomberg.net>, release@bloomberg.net, dbyers@politico.com, Hgold@politico.com, karmstrong@ap.org, tips@gawker.com, tips@curbed.com, ezra@vox.com, niraj.chokshi@washingtonpost.com, Michael Lipkin <michael.lipkin@law360.com>, news@cbsnewyork.com, newsroom@northjersey.com, news-tips@nytimes.com, kobradov@dmreg.com, "Gartland, Michael" <mgartland@nypost.com>, Daniel Geiger <dgeiger@crain.com>, Adam Liptak <liptak@nytimes.com>, Cafemom Dotcom <andrea.peyser@nypost.com>, Carl Campanile <ccampanile@nypost.com>, litaliano@nypost.com, fdicker@nypost.com, rblau@nydailynews.com, ndillon@nydailynews.com, jfermino@nydailynews.com, klovett@nydailynews.com, jmarzulli@nydailynews.com, nicole.fuller@newsday.com, mark.harrington@newsday.com, deon.hamton@newsday.com, Oshrat Carmiel <ocarmiel1@bloomberg.net>, Kaitlin Ugolik <kugolik@gmail.com>, "Morris, Keiko" <Keiko.Morris@wsj.com>, josh.barbanel@wsj.com, jeremy@deadline.com, nyoffice@strausnews.com, newsroom@wnyc.org, onlinemedia@wnyc.org, tcullen@commercialobserver.com, editorial@commercailobserver.com, llaguerra@commercailobserver.com, dghigliotty@commercialobserver.com, akarni <akarni@nypost.com>, efuchs@businessinsider.com, kerry@dailycaller.com, counterpunch@counterpunch.org, editor@buffnews.com, bconnolly@buffnews.com

I am sending this information to over 50 separate reporters simultaneously. The first member of the media to report this story will be the reporter that can be credited with exposing the largest collusion and corruption scandal in New York State History. Truly it is, and it's the simplest collusion scandal to prove.

New York State's elected Justices are rewriting contracts for the benefit of developers as the Governor, AG and Manhattan DA turn a blind eye to the corruption.

The description of my commercial apartment was repeatedly rewritten by the State of New York's elected Justices to void the air rights contractually given to my unit pursuant to the Seventh Paragraph footnote to the Schedule of Units found in the Amended Offering Plan for 450 West 31st Street Owners Corp.

The Seventh Paragraph of the Schedule of Units to the Amended Offering Plan for 450 West 31st Street Owners Corp. reads as follows:

"Seventh Paragraph- { NEW} The 12th Floor and Roof Unit shall have, in addition to the utilization of the roof, the right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."

These words mean that the 12th Floor and Roof Unit is given the utilization of the premise's air rights. This is proven by

looking at the definition of air rights:

"The rights to develop further the heretofore unused space above a building

or other structure." The American Heritage College Dictionary (3rd Ed.

1993).

"The right to use all or a portion of airspace above real property." Black's

Law Dictionary (5th Ed. 1979)"

In 2005 "applicable law" changed pursuant to the creation of the Hudson Yards District, and suddenly the premises was given the right to construct or extend up to 190,000 square feet of additional structures on its parcel of land. These air rights were worth at least $500 a square foot. (190,000 square feet x $500.00 = $95,000,000.00). In 2007, Gary Barnett of Extell Development wanted to have the development rights appurtenant to our apartment so that he could utilize them to built a 61 story tower on his abutting lot. (See attached pic).

In order to rule in Mr. Barnett's favor and dismiss our claim after I refused to waive my rights for the $2.5 million offered by Gary Barnett, Justice Marcy Friedman became the first person to assert that she did not see how the Seventh Paragraph footnote to the Schedule of Units can be construed as conveying air rights to our 12th Floor and Roof Unit apartment.

The only way Justice Friedman could come to this conclusion was to disregard my undisputed expert testimony and replace the words in the contact "to the extent that may from time to time be permitted under applicable law," with the words "*BUT* does not convey air rights to plaintiffs" - in a contract she had just ruled unambiguous. Extell Development's title company rejected the unlawful and internally inconsistent rewriting, and I was successful in preventing the sale, though the excavation had already begun.

On March 13, 2009, Justice Marcy Friedman issued another decision that acknowledged my rights to the exclusive utilization of the premise's development rights – and then added a provision voiding those very rights: "Provided that: Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension." (2009 WL 803427, Sup. Ct. N.Y. Co.).

The Appellate Division, First Department issued an internally contradictory decision on February 11, 2010 that nevertheless included the following words:

"that plaintiffs have the right to construct or extend structures upon the roof

or above the same to the extent that may from time to time be permitted

under applicable law, unanimously affirmed, without costs." *Brady v. 450*

*W. 31st St. Owners Corp.,* 70 AD3d 469 (2010).

In 2011, Sherwood Equities purchased the abutting lot and demanded a waiver from my wife and me. At first Sherwood was willing to pay for the waiver, but they later changed their strategy to arguing that I had lost the prior litigation, knowing that a corrupt New York State judge would go along with them.

After the Co-op Board sold the premise's development rights to Jeffrey Katz of Sherwood Equities, I filed two complaints in Supreme Court for breach of contract, tortious interference with contract, and related causes of action.

On March 18, 2014, Justice Kornreich held Oral Arguments that exposed the contradictions and inconsistencies of the prior decisions by the judges who rewrote the Offering Plan contract.

THE COURT: How would you deal with the decision of the Court and say he has no

development rights, he has no air rights, yet he has the right to build? What does that

mean? (Transcript p. 9:17-20).


THE COURT: The courts said that he has no air rights, but he has the right. But I think,

perhaps, the courts didn't understand that air rights, FAR, all of that is probably the same

things, development rights, so – (Transcript p.12:9-13).

THE COURT: I don't know what you said. Nor do I know what the Court said. (Transcript p. 14:12-13)

THE COURT: But I'm asking you because I have to in this action decide what the contract means, and I'd like your – you to weigh in on that. (Transcript p. 15:25-p. 16:2).

THE COURT: The decisions don't – don't address this, because, at least in this Court's mind, I don't see how you can build and build up without going into air rights or – you know, so I don't understand the decisions. I'm asking you for guidance. (Transcript p. 17:18-22).

THE COURT: And the Appellate Division and lower court doesn't say, "You can only build to a certain height," they said "Yeah, he has the right to build up and out but he can't use the air rights," which is really an enigma. (Transcript, p. 27:3-29:3).

THE COURT: I don't understand how you can build a structure on a roof if you have no air rights. (Transcript p. 28:4-5).

Mr. BRADY: So the correct reading it's an inconsistent decision. Please square the two, Your Honor. Square –

THE COURT: I don't know how. (Transcript p. 53:17-19).

Notwithstanding her admissions, Justice Kornreich rewrote the Appellate Division decision and the Offering Plan contract to say the following:

> "It has already been adjudged that while the owners of the unit *may* have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so." (July 15, 2014 decision).

In the July 15, 2014 decision, Justice Kornreich completely departed from all of her admissions and from her clear understanding of the case, and instead stated that Plaintiff's claims were frivolous and meritless, and imposed $400,000 of sanctions:

"It is clear from the papers and the transaction's history that Brady acted in

bad faith in bringing the instant cases."


"His misinterpretation of prior judgment, his feigned ignorance or the origin

or the meaning of the phrase "transferable development rights," and his

argument that a decision, which he appealed to no avail, is not binding are

but a few examples of the frivolous arguments made in the instant actions."


"In short, Brady has dragged more than twenty parties into court to litigate

matters that have already been determined and claims that lack any

substance."


"The trial court and the appellate court courts in the Prior Action have

denied him such control. Undeterred, he has ignored these courts' rulings

and brought these meritless actions, abusing the judicial process."


"This is a near perfect example of frivolous conduct that warrants defendants

request for the imposition of sanctions."

The New York State Commission on Judicial Conduct, Governor Cuomo, Attorney General Eric Schneiderman, Manhattan District Attorney Cyrus Vance, and the Justices of the Court of Appeals have all gone along with this rewriting of my Offering Plan contract and seizure of my property. None of them will admit to seeing anything wrong, and none of them will agree to probe this corruption.  By sticking together, this story has passed below the media's radar screen.

All that a member of the media needs to do to expose this corruption and collusion is ask the Justices to explain the line of reasoning or legal authority that they used to feel entitled to rewrite the description of my apartment to void the $100 million dollars worth of air rights.

The media should ask the billionaire developers Gary Barnett of Extell, Jeffrey Katz of Sherwood Equities, and Frank McCourt of McCourt Global why judges are rewriting contract descriptions of apartments found in Offering Plans for their benefit. A reporter should also ask the Attorney General, the District Attorney and the Governor why they are allowing judges to rewrite contract terms and descriptions of apartments for the benefit of real estate developers.

The attached images will help in your understanding of this matter.

Any reporter can contact me directly to discuss this story at bradyny@gmail.com, or by phone at (201) 923-5511.

Thank you,

James H. Brady


**5 attachments**



**Air Rights Pic1.jpg**
124K



**Air Rights Pic2.jpg**
81K



**Air Rights Pic Extell Bldg.jpg**
51K

**Michael Garlasco Affidavit.pdf**
158K

**The View - Jeff Katz on his Windfall Profit.mp4**
20939K

# EXHIBIT

# B

 Gmail                                   **Sebastian Calvo <airrightsnyc450@gmail.com>**

---

## Fwd: THE LARGEST AIR RIGHTS SCANDAL IN NY STATE HISTORY HAPPENED RIGHT OUTSIDE THE WINDOWS OF ASSOCIATED PRESS
1 message

---

**Jim Brady** <bradyny@gmail.com>                                    Fri, Apr 8, 2016 at 1:03 PM
To: Sebastian 450 <airrightsnyc450@gmail.com>

---------- Forwarded message ----------
From: **Jim Brady** <bradyny@gmail.com>
Date: Tue, Sep 1, 2015 at 12:35 PM
Subject: THE LARGEST AIR RIGHTS SCANDAL IN NY STATE HISTORY HAPPENED RIGHT OUTSIDE THE
WINDOWS OF ASSOCIATED PRESS
To: lynn@northjersey.com, info@judicialwatch.org, rubin@rubinnevarrette.com, press@thedailybeast.com, Lee
Fang <lhfang@gmail.com>, fergiewhitney@msn.com, Jill Ornitz <jillornitz@gmail.com>,
chester.soria@metro.us, Yannic Rack <yannic.rack@gmail.com>, scoop@thehuffingtonpost.com,
news@pressrepublican.com, nbode@dnainfo.com, phedlund@dnainfo.com, desk@nbcnewyork.com,
mfunkhouser@governing.com, zpatton@governing.com, edaigneau@governing.com, Martin Schenker
<mschenker@bloomberg.net>, release@bloomberg.net, dbyers@politico.com, Hgold@politico.com,
karmstrong@ap.org, tips@gawker.com, tips@curbed.com, ezra@vox.com, niraj.chokshi@washingtonpost.com,
Michael Lipkin <michael.lipkin@law360.com>, news@cbsnewyork.com, newsroom@northjersey.com,
news-tips@nytimes.com, kobradov@dmreg.com, "Gartland, Michael" <mgartland@nypost.com>, Daniel Geiger
<dgeiger@crain.com>, Adam Liptak <liptak@nytimes.com>, Cafemom Dotcom <andrea.peyser@nypost.com>,
Carl Campanile <ccampanile@nypost.com>, litaliano@nypost.com, fdicker@nypost.com,
rblau@nydailynews.com, ndillon@nydailynews.com, jfermino@nydailynews.com, klovett@nydailynews.com,
jmarzulli@nydailynews.com, nicole.fuller@newsday.com, mark harrington <mark.harrington@newsday.com>,
deon.hamton@newsday.com, Oshrat Carmiel <ocarmiel1@bloomberg.net>, Kaitlin Ugolik
<kugolik@gmail.com>, "Morris, Keiko" <Keiko.Morris@wsj.com>, josh.barbanel@wsj.com,
jeremy@deadline.com, nyoffice@strausnews.com, newsroom@wnyc.org, onlinemedia@wnyc.org,
tcullen@commercialobserver.com, editorial@commercailobserver.com, llaguerra@commercailobserver.com,
dghigliotty@commercialobserver.com, akarni <akarni@nypost.com>, Erin Fuchs
<efuchs@businessinsider.com>, Kerry Picket <kerry@dailycaller.com>, counterpunch@counterpunch.org,
editor@buffnews.com, bconnolly@buffnews.com

The attached photo shows the parcel of land that caused the largest air rights scandal in NY State history sits
right across the street from the Associated Press World Headquarters. They have been sleeping through all of
this or perhaps to focused on their upcoming move to smaller , less expensive Headquarters

This information is in addition to the information that I simultaneously sent to a number of reporters yesterday,
August 31,2015

As was proven in that email , the State's elected Justices kept rewriting the description of my apartment after I
refused repeated threats to waive my rights. Under New York Law a waiver is a reliquishment of a known right.

 Enclosed is a copy of the unsigned waiver form that Jeffery Katz of Sherwood Equities and the Co-op Board
demanded that my wife and I sign. Also attached is a copy of the letter from the co-op board demanding the
waiver and making false claims that we lost the prior litigation when the March 18 2014 oral argument trancript
proves that was a false claim. The transcript proved my wife and I were stuck with illogical interpretations of
our contract in what were clear attempts at voiding our apartment's contractual right to have the utilization of

the 190,000 square feet of air rights that were given to the premises pursuant to the 2005 creation of the Hudson Yards District .

The attached photos  shows the value of air rights attached to my 12th Floor and Roof Unit before the air rights were seized  for the benefit of the powerful developers

 Im Still waiting to see which reporter will have the integrity and caurage to 1) ask the States Justices why they rewrote the  contract description of my apartment  to void my apartments air rights 2) ask the developers why the State's elected  Justices repeatedly  rewrote  the contract description of my apartment  to void my apartments rights for  their  benefit after I refused to waive my rights 3) ask the Governor, AG and Manhattan  District attorney why they are not doing anything then shown that corrupt State Justices  are rewriting contracts to void them for the benefit  of New York Developers. None of these individuals will be able to explain the reasons for their actions and inactions which will prove that they were corrupt and in collusion.

I can be reached at 201-923-5511 or my email address  bradyny@gmail.com if you have any questions.

Thank You

James H Brady

**4 attachments**



**Air Rights Pic1.jpg**
124K



**80736598.IfYEAgJZ.jpg**
90K

 **waiver form.pdf**
515K

**KaufmanThreateningLetter.pdf**
180K

# EXHIBIT

# C

 **Sebastian Calvo <airrightsnyc450@gmail.com>**

---

## Fwd: Day three, its time someone starts asking questions and let the shit hit the fan
2 messages

**Jim Brady** <bradyny@gmail.com>                                          Fri, Apr 8, 2016 at 1:01 PM
To: Sebastian 450 <airrightsnyc450@gmail.com>

---------- Forwarded message ----------
From: **Jim Brady** <bradyny@gmail.com>
Date: Wed, Sep 2, 2015 at 1:35 PM
Subject: Day three, its time someone starts asking questions and let the shit hit the fan
To: ynn@northjersey.com, info@judicialwatch.org, rubin@rubinnevarrette.com, press@thedailybeast.com, Lee Fang <lhfang@gmail.com>, fergiewhitney@msn.com, Jill Ornitz <jillornitz@gmail.com>, chester.soria@metro.us, Yannic Rack <yannic.rack@gmail.com>, scoop@thehuffingtonpost.com, news@pressrepublican.com, nbode@dnainfo.com, phedlund@dnainfo.com, desk@nbcnewyork.com, mfunkhouser@governing.com, zpatton@governing.com, edaigneau@governing.com, Martin Schenker <mschenker@bloomberg.net>, release@bloomberg.net, dbyers@politico.com, Hgold@politico.com, karmstrong@ap.org, tips@gawker.com, tips@curbed.com, ezra@vox.com, niraj.chokshi@washingtonpost.com, Michael Lipkin <michael.lipkin@law360.com>, news@cbsnewyork.com, newsroom@northjersey.com, news-tips@nytimes.com, kobradov@dmreg.com, "Gartland, Michael" <mgartland@nypost.com>, Daniel Geiger <dgeiger@crain.com>, Adam Liptak <liptak@nytimes.com>, Cafemom Dotcom <andrea.peyser@nypost.com>, Carl Campanile <ccampanile@nypost.com>, litaliano@nypost.com, fdicker@nypost.com, rblau@nydailynews.com, ndillon@nydailynews.com, jfermino@nydailynews.com, klovett@nydailynews.com, jmarzulli@nydailynews.com, nicole.fuller@newsday.com, mark harrington <mark.harrington@newsday.com>, deon.hamton@newsday.com, Oshrat Carmiel <ocarmiel1@bloomberg.net>, Kaitlin Ugolik <kugolik@gmail.com>, "Morris, Keiko" <Keiko.Morris@wsj.com>, josh.barbanel@wsj.com, jeremy@deadline.com, nyoffice@strausnews.com, newsroom@wnyc.org, onlinemedia@wnyc.org, tcullen@commercialobserver.com, editorial@commercailobserver.com, llaguerra@commercailobserver.com, dghigliotty@commercialobserver.com, akarni <akarni@nypost.com>, Erin Fuchs <efuchs@businessinsider.com>, Kerry Picket <kerry@dailycaller.com>, counterpunch@counterpunch.org, editor@buffnews.com, bconnolly@buffnews.com


As you know from my August 31st and September 1 2015 emails the description of my commercial apartment was repeatedly rewritten by the State of New York's elected Justices in repeated attempts to void the air rights contractually given to my unit pursuant to the Seventh Paragraph footnote to the Schedule of Units found in the Amended Offering Plan for 450 West 31st Street Owners Corp.

The Seventh Paragraph of the Schedule of Units to the Amended Offering Plan for 450 West 31st Street Owners Corp. reads as follows:

"Seventh Paragraph- { NEW} The 12th Floor and Roof Unit shall have, in addition to the utilization of the roof, the right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."

These words mean that the 12th Floor and Roof Unit is given the utilization of the premise's air rights. This is proven by looking at the definition of air rights:

"The rights to develop further the heretofore unused space above a building or other structure." The American Heritage College Dictionary (3rd Ed.1993).

"The right to use all or a portion of airspace above real property." Black's Law Dictionary (5th Ed. 1979)"

Its very interesting to me  that not one reporter listed in this group email is interested in an explanation from the States's Judicial employees why the Seventh Paragraph Footnote to the Schedule of Units does not mean what it says on its face.

Doesn't one of you think that your media has a duty to expose the magnitude of the public corruption found in New York Government?Doesn't one of you think that the investors from around the world would want to know that the Justices of the state of New York would want to know that the contract description of apartment's are being written for the sake  of New York Developers?

The enclosed diagram shows how many people were involved the first time the State of New York's employees and commission members colluded in trying to seize  my apartments air  rights.  The statements  in the diagram are proven true when compared against the  statements made during oral arguments on March 18 2014. Thesse statements were sent to you on August 31, 2012 but I am sending them again for your convenience

I remain abatable  by phone  201-923-5511 and email bradyny.gmail.com to any reporter seeking additional informationDa

Thank You

James H Brady



**1421335391974.jpeg**
457K

---

**Jim Brady** <bradyny@gmail.com>                                           Fri, Apr 8, 2016 at 1:09 PM
To: Sebastian 450 <airrightsnyc450@gmail.com>

[Quoted text hidden]

---

# EXHIBIT

# D

Gmail - Fwd: Fourth Email - Are the reporters in this group email being...      https://mail.google.com/mail/u/0/?ui=2&ik=75137dfed7&view=pt&se

 Gmail

**Sebastian Calvo <airrightsnyc450@gmail.com>**

## Fwd: Fourth Email - Are the reporters in this group email being told not to report this air rights scandal?
1 message

**Jim Brady** <bradyny@gmail.com>                                          Fri, Apr 8, 2016 at 1:09 PM
To: Sebastian 450 <airrightsnyc450@gmail.com>

---------- Forwarded message ----------
From: **Jim Brady** <bradyny@gmail.com>
Date: Thu, Sep 3, 2015 at 12:13 PM
Subject: Fourth Email - Are the reporters in this group email being told not to report this air rights scandal?
To: lynn@northjersey.com, info@judicialwatch.org, rubin@rubinnevarrette.com, press@thedailybeast.com, Lee
Fang <lhfang@gmail.com>, fergiewhitney@msn.com, Jill Ornitz <jillornitz@gmail.com>,
chester.soria@metro.us, Yannic Rack <yannic.rack@gmail.com>, scoop@thehuffingtonpost.com,
news@pressrepublican.com, nbode@dnainfo.com, phedlund@dnainfo.com, desk@nbcnewyork.com,
mfunkhouser@governing.com, zpatton@governing.com, edaigneau@governing.com, Martin Schenker
<mschenker@bloomberg.net>, release@bloomberg.net, dbyers@politico.com, Hgold@politico.com,
karmstrong@ap.org, tips@gawker.com, tips@curbed.com, ezra@vox.com, niraj.chokshi@washingtonpost.com,
Michael Lipkin <michael.lipkin@law360.com>, news@cbsnewyork.com, newsroom@northjersey.com,
news-tips@nytimes.com, kobradov@dmreg.com, "Gartland, Michael" <mgartland@nypost.com>, Adam Liptak
<liptak@nytimes.com>, Cafemom Dotcom <andrea.peyser@nypost.com>, Carl Campanile
<ccampanile@nypost.com>, .litaliano@nypost.com, fdicker@nypost.com, rblau@nydailynews.com,
ndillon@nydailynews.com, jfermino@nydailynews.com, klovett@nydailynews.com, jmarzulli@nydailynews.com,
nicole.fuller@newsday.com, mark harrington <mark.harrington@newsday.com>, deon.hamton@newsday.com,
Oshrat Carmiel <ocarmiel1@bloomberg.net>, Kaitlin Ugolik <kugolik@gmail.com>, "Morris, Keiko"
<Keiko.Morris@wsj.com>, josh.barbanel@wsj.com, jeremy@deadline.com, nyoffice@strausnews.com,
newsroom@wnyc.org, onlinemedia@wnyc.org, tcullen@commercialobserver.com,
editorial@commercialobserver.com, llaguerra@commercialobserver.com, dghigliotty@commercialobserver.com,
akarni <akarni@nypost.com>, Erin Fuchs <efuchs@businessinsider.com>, Kerry Picket
<kerry@dailycaller.com>, counterpunch@counterpunch.org, editor@buffnews.com, bconnolly@buffnews.com

I.
In a front page story on August 1,2014, the New York Law Journal called me a crusader for my tireless efforts
to disclose the fact that Justices kept rewriting the description of my commercial apartment for the benefit of
powerful developers.  As I said in the story, my fight is much bigger then me. My fight was to expose the fact
that corrupt justices could get away with rewriting the contract description of people's apartments for the benefit
of others.  This has huge consequences for New York City, where real estate contracts are the life-blood
circulating through the city. All of you have a duty to report the corruption and I would think all of you would be
racing to report this scandal. Why aren't you?

The only reporter to contact me was Daniel Greiger of Crain's New York. He was the reporter in the interview
that was sent in my original August 31,2015 email.

In fact he contacted me twice. Not to report on the story but to tell be to take his name off the group email.

The following link is to the  interview conducted by Daniel Geiger of Crain's NY with Jeffrey Katz of Sherwood
Equities discussing the $120-plus million he made by flipping the 360 Tenth Ave.  The reason for the price
increase is that what was sold to Frank McCourt was not what was purchased by Sherwood:  the lot sold to
McCourt Partners included roughly 170,000 s/f of additional air rights that were illegally seized without

compensation after I refused to waive my rights for free. In the interview it is shown that Jeffery Katz does not mention a word about the fact that he unlawfully engaged in a transaction with 450 West 31st Street Owners Corp. and seized 170,000 square feet of development rights that were appurtenant to my Unit.

https://www.dropbox.com/s/takn9qkp0ld4ckq/The%20View%20-%20Jeff%20Katz%20on%20his%20Windfall%20Profit.mp4?dl=0

A link to the story discussing the initial purchase of the lot by Sherwood is linked below.
http://rew-online.com/2011/05/25/sherwood-equities-buys-356-10th-avenue-parcel-for-over-42-million/

The Wall Street Journal ran an article in September 2013 discussing the "730,000-square-foot tower on Manhattan's West Side" that Frank McCourt is planning.  As the Real Estate Weekly story stated, the original lot could "accommodate up to 556,000 s/f of either commercial or residential development or a mix of the two, though additional air rights an be purchased for the site that would allow up to about 700,000 s/f to be built." The additional 170,000 s/f in the lot Sherwood sold to McCourt were the air rights illegally seized from my Unit. That is what accounts for the "ridiculous" discrepancy between the $43 million purchase price and the $167 million sale price.

Mr Greiger knew about the illegal transaction and went along with the scandal rather then asking why there was an increase in the permissible development from 560,000 square feet 730,000 square feet.

http://www.wsj.com/articles/SB10001424127887324202304579051461921582476

The parties involved have kept the origin of the additional air rights secret.  Neither Sherwood nor McCourt Partners mentioned the additional air rights in their respective press releases. Normally, developers brag about the acquisition of air rights and are very public about their purchase price.  A reporter should ask Frank McCourt why he was willing to pay nearly four-times the purchase price for the lot only 18 months later.

II.
A big part of what made the story so newsworthy was the fact that the Justices decision was brutal toward me. The Court needed to make brutal false claims against me in order to justify issuing $400,000.00 in sanctions against me. The goal was to make me too weak to fight back against the much larger developers who seized my rights.  This becomes readily obvious when comparing the Court's comments at he March 18, 2014 Oral Arguments with the Court's July 15, 2014 decision.

> THE COURT: How would you deal with the decision of the Court and say
>
> he has no development rights, he has no air rights, yet he has the right to
>
> build? What does that mean? (Transcript p. 9:17-20).

> THE COURT: The courts said that he has no air rights, but he has the right.
>
> But I think, perhaps, the courts didn't understand that air rights, FAR, all of
>
> that is probably the same things, development rights, so –
>
> (Transcript p.12:9-13).

> THE COURT: I don't know what you said. Nor do I know what the Court
>
> said. (Transcript p. 14:12-13)

> THE COURT: But I'm asking you because I have to in this action decide

what the contract means, and I'd like your – you to weigh in on that. (Transcript p. 15:25-p. 16:2).

THE COURT: The decisions don't – don't address this, because, at least in this Court's mind, I don't see how you can build and build up without going into air rights or – you know, so *I don't understand the decisions*. I'm asking you for guidance. (Transcript p. 17:18-22).

THE COURT: And the Appellate Division and lower court doesn't say, "You can only build to a certain height," they said **"Yeah, he has the right to build up and out but he can't use the air rights,"** *which is really an enigma.* **(Transcript, p. 27:3-29:3).**

THE COURT: **I don't understand how you can build a structure on a roof if you have no air rights**. (Transcript p. 28:4-5).

MR. BRADY: **So the correct reading it's an inconsistent decision. Please square the two, Your Honor. Square –**

THE COURT: **I don't know how.** (Transcript p. 53:17-19).

THE COURT: – it was the sponsor who put this in, it was the sponsor who owned the penthouse and roof. *Perhaps that was his intent*. However, I can't rule that way because the Supreme Court already ruled and the Appellate Division already ruled that you do not own those air rights. (Tr. p. 54:11-20).

MR. BRADY: So the correct reading it's an inconsistent decision. Please square the two, Your Honor. Square –

THE COURT: I don't know how. (Transcript p. 53:17-19).

...

THE COURT: So, basically they affirmed and nobody really explained what the use of the building's – what Paragraph 7 – strike that – what

Paragraph 7 meant and how plaintiff would have the right to construct or

extend structures upon the roof or above and yet not have any right to the air

rights. The Appellate – the Court of Appeals, as I said, did not grant leave.

(Transcript p. 7:1-7).

THE COURT: They acknowledge that you have something. The question is

what is that something.

In the July 15, 2014 decision, Justice Kornreich completely departed from her understanding of the case and
handed down a vicious ruling splattered with *ad hominem* attacks:

"It is clear from the papers and the transaction's history that Brady acted in

bad faith in bringing the instant cases."

"His misinterpretation of prior judgment, his feigned ignorance or the origin

or the meaning of the phrase "transferable development rights," and his

argument that a decision, which he appealed to no avail, is not binding are

but a few examples of the frivolous arguments made in the instant actions."

"In short, Brady has dragged more than twenty parties into court to litigate

matters that have already been determined and claims that lack any

substance."

"The trial court and the appellate court courts in the Prior Action have

denied him such control. Undeterred, he has ignored these courts' rulings

and brought these meritless actions, abusing the judicial process."

"This is a near perfect example of frivolous conduct that warrants defendants

request for the imposition of sanctions."

I remain available through this email or by phone at (201) 923-5511.

Sincerely,
James H. Brady

# EXHIBIT
# E

Gmail - Fwd: 5th email since August 31,2015 A COMPARISON OF ...         https://mail.google.com/mail/u/0/?ui=2&ik=75137dfed7&view=pt&sea

 Gmail

**Sebastian Calvo <airrightsnyc450@gmail.com>**

---

## Fwd: 5th email since August 31,2015 A COMPARISON OF ENCLOSED MARCH 18,2015 TO JULY 15, 2014 DECISION PROVES CORRUPT JUDGES REWRITING CONTRACTS FOR POWERFUL NYC DEVELOPERS

1 message

---

**Jim Brady** <bradyny@gmail.com>                                      Fri, Apr 8, 2016 at 1:08 PM
To: Sebastian 450 <airrightsnyc450@gmail.com>

---

---------- Forwarded message ----------
From: **Jim Brady** <bradyny@gmail.com>
Date: Wed, Sep 9, 2015 at 1:52 PM
Subject: 5th email since August 31,2015 A COMPARISON OF ENCLOSED MARCH 18,2015 TO JULY 15, 2014
DECISION PROVES CORRUPT JUDGES REWRITING CONTRACTS FOR POWERFUL NYC DEVELOPERS
To: ynn@northjersey.com, info@judicialwatch.org, rubin@rubinnevarrette.com, press@thedailybeast.com, Lee
Fang <lhfang@gmail.com>, fergiewhitney@msn.com, Jill Ornitz <jillornitz@gmail.com>,
chester.soria@metro.us, Yannic Rack <yannic.rack@gmail.com>, scoop@thehuffingtonpost.com,
news@pressrepublican.com, nbode@dnainfo.com, phedlund@dnainfo.com, desk@nbcnewyork.com,
mfunkhouser@governing.com, zpatton@governing.com, edaigneau@governing.com, Martin Schenker
<mschenker@bloomberg.net>, release@bloomberg.net, dbyers@politico.com, Hgold@politico.com,
karmstrong@ap.org, tips@gawker.com, tips@curbed.com, ezra@vox.com, niraj.chokshi@washingtonpost.com,
Michael Lipkin <michael.lipkin@law360.com>, news@cbsnewyork.com, newsroom@northjersey.com,
news-tips@nytimes.com, kobradov@dmreg.com, "Gartland, Michael" <mgartland@nypost.com>, Daniel Geiger
<dgeiger@crain.com>, Adam Liptak <liptak@nytimes.com>, Cafemom Dotcom <andrea.peyser@nypost.com>,
Carl Campanile <ccampanile@nypost.com>, litaliano@nypost.com, fdicker@nypost.com,
rblau@nydailynews.com, ndillon@nydailynews.com, jfermino@nydailynews.com, klovett@nydailynews.com,
jmarzulli@nydailynews.com, nicole.fuller@newsday.com, mark harrington <mark.harrington@newsday.com>,
deon.hamton@newsday.com, Oshrat Carmiel <ocarmiel1@bloomberg.net>, Kaitlin Ugolik
<kugolik@gmail.com>, "Morris, Keiko" <Keiko.Morris@wsj.com>, josh.barbanel@wsj.com,
jeremy@deadline.com, nyoffice@strausnews.com, newsroom@wnyc.org, onlinemedia@wnyc.org,
tcullen@commercialobserver.com, editorial@commercailobserver.com, llaguerra@commercailobserver.com,
dghigliotty@commercialobserver.com, akarni <akarni@nypost.com>, Erin Fuchs
<efuchs@businessinsider.com>, Kerry Picket <kerry@dailycaller.com>, counterpunch@counterpunch.org,
editor@buffnews.com, bconnolly@buffnews.com

I THINK ALL NEWY ORKERS AND PEOPLE FROM AROUND THE WORLD WOULD WANT TO KNOW IF
NEW YORK STATE JUSTICES ARE REWRITING OFFING PLAN CONTRACT DESCRIPTIONS OF
APARTMENTS TO VIOD THEIR APARTMENTS RIGHTS FOR THE BENEFIT OF POWERFUL DEVELOPERS

WHAT DOES THE MEDIA THINK?

DOES THE MEDIA SEE ANYTHING WRONG?

IT APPEARS THE MEDIA WANTS TO HIDE  THIS FACT, WHICH RAISES RAISES NEW QUESTIONS

I REMAIN AVAILABLE BY PHONE  201-923-5511 OR EMAIL bradyny@GMAIL.COM

THANK YOU

JIM BRADY

**2 attachments**

 **Transcript Hearing March 18 2014.pdf**
6839K

**Kornreich ORDER & DECISION July 15 2014.pdf**
1035K